**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

Richard Thomason, *et al.*,

    Plaintiffs,

        v.

Amalgamated Local 863, *et al.*,

    Defendants.

Case No. 1:06cv767

Judge Michael R. Barrett

## OPINION & ORDER

This matter is before the Court upon Defendants Amalgamated Local No. 863 ("Local 863") and International Union United Automobile Aerospace and Agricultural Implement Workers of America's ("International Union") Motion for Summary Judgment. (Doc. 69). Plaintiffs Timothy Evans, Michael Lewis, and Michael Ogle filed a Response in Opposition (Doc. 103), and Defendants filed a Reply (Doc. 105). Also before the Court is Plaintiffs' Partial Motion for Summary Judgment. (Doc. 71). Defendants filed a Response in Opposition (Doc. 74) and Plaintiff filed a Reply (Doc.117).

Plaintiffs have also filed a Motion to Strike the Affidavit of Greg Drudi (Doc. 113), which is an affidavit Defendants submitted in support of their Motion for Summary Judgment. Defendants have filed a Response in Opposition to Plaintiffs' Motion to Strike (Doc. 114) and Plaintiffs filed a Reply (Doc. 118).

Also before the Court is Plaintiffs' Motion for Hearing (Doc. 125), which Defendants oppose (Doc. 126). The Court does not deem that oral argument is essential to the fair resolution of this case pursuant to S.D. Ohio Civ. R. 7.1(b)(2). Therefore, Plaintiff's

Motion for Hearing is DENIED.

**I.      BACKGROUND**

Plaintiffs Timothy Evans, Michael Lewis and Michael Ogle allege that they were denied the right to vote in violation of the Labor Management Relations and Disclosure Act ("LMRDA"), 29 U.S.C. § 411.[1]

The underlying facts of this case are largely undisputed.

Prior to 2004, Local 863 was an amalgamated union representing employees who worked for two different employers at two separate facilities.  One facility was Ford's Sharonville Transmission plant located in Sharonville, Ohio.   The second facility was the Batavia Transmission plant located in Batavia, Ohio.

The Sharonville Local 863 members worked under the UAW-Ford National Collective Bargaining Agreement and the Local 863-Sharonville Local Collective Bargaining Agreement.

The Batavia facility was originally run by a Ford entity, but in 1999, Ford transferred the facility to ZF Batavia, LLC ("ZF"), which was a joint venture between a German company and Ford.  ZF leased its initial workforce from Ford, which consisted of those Ford workers who had been assigned to the Batavia plant at the time of the transfer. Employees in the Ford system worked under the UAW-Ford National Collective Bargaining Agreement and the Local 863-Batavia Local Collective Bargaining Agreement.  The new hourly employees hired by ZF became members of UAW Local 863, but worked under the UAW-ZF National Agreement that was negotiated by the UAW

---

[1] Plaintiffs specifically rely on 29 U.S.C. § 411(a)(1), which provides that every member of a labor organization has equal rights "to vote in elections or referendum of the labor organization, to attend membership meetings, and to participate in the deliberation and voting upon the business of such meetings, subject to reasonable rules and regulations in such organization's constitution and bylaws."

2

Ford Department and ZF. The ZF Agreement expired on September 20, 2004.

Plaintiffs were hired by Ford to work at the Sharonville facility. Plaintiffs were members of Local 863. In 2001, Plaintiffs were laid off, but elected to take preferential placements under the UAW-Ford National Agreement. Appendix N to the Agreement allowed UAW members to be preferentially placed to fill openings at other UAW-Ford facilities nationwide. (Pl. Dep. Ex. 38). Preferential placement is a permanent transfer. (Doc. 69-4, Charles Browning Dep. at 141-42). Preferential placement allows low seniority employees to remain as active Ford employees and to protect their seniority and recall rights. (Doc. 69-15, Michael Ogle Dep. at 32).

Evans and Lewis accepted preferential placements at the Michigan Truck facility, which was within the jurisdiction of UAW Local 900. Ogle accepted a preferential placement at the Kentucky Truck facility, which was within the jurisdiction of UAW Local 862.

During this period of time, Ford re-acquired the Batavia facility. The International Union, the UAW Ford Department and Ford reached an agreement by which the ZF-employed members of Local 863 would become Ford employees and would work under the 2003 UAW-Ford National Agreement. On September 20, 2004, two meetings were held to explain the transition agreement. At the meetings, the ZF employees voted to approve the agreement.

In October of 2004, Plaintiffs exercised their rights under Appendix O to the UAW-Ford National Agreement and elected to return to their basic unit, the Sharonville facility. All three Plaintiffs then transferred to the Batavia facility.

On November 9, 2006, Plaintiffs filed their Complaint, claiming that Defendants

violated the LMRDA when they denied Ford-employed members of Local 863 their right to vote at the September 20, 2004 meetings.

In their Motion for Summary Judgment, Defendants argue that they are entitled to summary judgment because: (1) Plaintiffs were not members of Local 863 on September 20, 2004; (2) Plaintiffs failed to bring this action within the two-year statute of limitations for actions under the LMRDA; (3) Plaintiffs' claims must fail as a matter of law on the merits, because the UAW is entitled to strong deference for its actions involved in interpreting its own governing documents, and the actions taken by the UAW in this matter were fair and reasonable.

In their Motion for Partial Summary Judgment, Plaintiffs move for summary judgment on two issues: (1) Plaintiffs were Members of Local 863 at the time of the September 20, 2004, meeting; (2) Plaintiffs had a right to vote on the issues in that meeting.

## II. ANALYSIS

### A. Standard of Review

Federal Rule of Civil Procedure 56(a) provides that summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party has the burden of showing an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party has met its burden of production, the non-moving party cannot rest on his pleadings, but must present significant probative evidence in support of his complaint to defeat the motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

B.  **Motion to Strike**

In their Motion to Strike, Plaintiffs move to strike the affidavit of Gregory Drudi, because: (1) Drudi did not have personal knowledge of the matters in his affidavit; and (2) his affidavit contradicted his prior deposition testimony.

Under Federal Rule of Civil Procedure 56, "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."  Fed.R.Civ.P. 56(c)(4).  In addition, "a party cannot create a disputed issue of material fact by filing an affidavit that contradicts the party's earlier deposition testimony."  *Aerel, S.R.L. v. PCC Airfoils, L.L.C.*, 448 F.3d 899, 906 (6th Cir. 2006).

Plaintiffs' Motion to Strike focuses on paragraphs five and six of Drudi's affidavit. In paragraph five of his affidavit, Drudi states: "I understand that, at certain times relevant in the above-captioned matter, members of UAW Local 863 were employed in bargaining units at both Ford Motor Company ("Ford") and ZF Batavia, LLC ("ZF")."  (Doc. 114-1, Gregory Drudi Aff. ¶ 5).  In paragraph six of his affidavit, Drudi states:

> I further understand the case involves the decision of the International Union, UAW, specifically its National Ford Department, to permit only members of Local 863 who were employed by ZF to vote to approve a Transition Agreement, which governed the transition [of] their employment from ZF to Ford.  Under that Agreement, their terms and conditions were to be covered by the terms of the UAW-Ford National Collective Bargaining Agreement.

(Doc. 114-1, at ¶ 6).  Within the context of Drudi's affidavit, the Court understands that these paragraphs are intended to provide background for Drudi's statement that the UAW's decision to limit the September 20, 2004 vote to only ZF-employed members of

5

Local 863 is consistent with the UAW Constitution. Drudi is not claiming that he has personal knowledge of the underlying facts, but merely expressing his "understanding." To that extent, these paragraphs are consistent with his previous deposition testimony. Drudi admitted in his deposition that he only learned of the transition agreement in preparation for his deposition. (Doc. 81, Gregory Drudi Dep. at 19-20). Moreover, Drudi is not disputing the underlying facts, but merely repeating his understanding of the facts in order to provide his interpretation of the UAW Constitution. While interpretation of the UAW Constitution ultimately involves a question of law for the Court, there is nothing in Drudi's Affidavit which warrants that it be stricken from the record. Therefore, Plaintiffs' Motion to Strike the Affidavit of Greg Drudi is DENIED.

### C. Standing

The LMRDA's bill of rights provides certain rights to "members" of labor organizations:

> Every member of a labor organization shall have equal rights and privileges within such organization to nominate candidates, to vote in elections or referendums of the labor organization, to attend membership meetings, and to participate in the deliberations and voting upon the business of such meetings, subject to reasonable rules and regulations in such organization's constitution and bylaws.

29 U.S.C. § 411(a)(1). Only union members have standing to sue under § 411. *United Bhd. of Carpenters & Joiners of Am., Dresden Local No. 267 v. Ohio Carpenters Health & Welfare Fund*, 926 F.2d 550, 556 (6th Cir. 1991).

Defendants argue that Plaintiffs were not members of UAW Local 863 under the terms of the UAW Constitution and UAW Local 863 Bylaws at the time of the September 20, 2004 vote, and therefore Plaintiffs did not have the right to vote. Defendants specifically rely on Article 17, Section 3 of the UAW Constitution which provides:

6

> Any member in good standing at the time of leaving the jurisdiction of her/his Local Union shall establish her/his membership in another UAW Local Union by either of the following:
>
> (a) By obtaining an honorable withdrawal transfer card and depositing the same immediately in such other UAW Local Union. Failure to deposit the honorable withdrawal transfer card within one (1) calendar month and to pay dues which have accrued since coming within the jurisdiction of such other UAW Local Union will result in termination of the honorable withdrawal transfer card.
>
> (b) By payment of an initiation fee and dues to such other UAW Local Union, in which case such member's good standing will start as of the date of such payment.

(Def. Dep. Ex. 26, at 55).[2] There is no dispute that Plaintiffs were members in good standing when they accepted the preferential placements and left Local 863. It is also not disputed that Plaintiffs never obtained and deposited honorable withdrawal cards or paid initiation fees when they transferred to Michigan Truck or Kentucky Truck. (Doc. 69-8, Timothy Evans Dep. at 73-74; Doc. 69-14, Michael Lewis Dep. at 69, 75; Ogle Dep. at 72-73).

Defendants explain that an honorable withdraw card is no longer necessary because the transfer is now automatic. (Drudi Dep. at 72). Greg Drudi, who serves as Administrative Assistant to the President of the International Union, explained that part of his job duties include reviewing and interpreting provisions of the UAW Constitution. (Drudi Aff., ¶ 4). Drudi testified that honorable withdraw cards are no longer used. (Drudi Dep. at 72). Drudi explained the honorable withdraw cards are "antiquated" and go "back to when eggs cost 2 cents a dozen." (Id. at 82). Drudi explains that the process of transferring from one local to another is now "done differently with Microsoft

---

[2]Article 6, Section 10 of the UAW Constitution provides that "no member shall be allowed to hold membership in more than one (1) Local Union of the International Union at the same time, except by permission of the International Executive Board." (Def. Dep. Ex. 26, at 9).

7

Excel spreadsheets and rosters of employment, and it's more of an automatic process." (Id. at 72).

Defendants add that charging an initiation fee is an action that may be taken by a receiving local union, and has nothing to do with whether Evans, Lewis and Ogle left the membership of UAW Local 863 when they transferred to Michigan Truck or Kentucky Truck.  Instead, Defendants maintain that one of the most basic obligations of a UAW member is to pay dues to his or her Local Union.   (Article 16, Section 2 of Def. Depo. Ex. 26, at 44-45; Quick Dep. at 90).

Defendants explain that while Plaintiffs were working at the Michigan and Kentucky facilities, Plaintiffs paid dues to Locals 900 or 862.  (Doc. 68, May 2, 2013, Stipulation & Exs. 1-3).   Plaintiffs did not pay dues to Local 863 during that period of time. (Evans Dep. at. 63; Lewis Dep. at 62; Ogle Dep. at 59-60).   Defendants point out that these dues were pursuant to the Hourly Enrollment and Deduction Authorization Forms ("Authorization Forms") signed by Plaintiffs when they were hired.  The Authorization Forms provide:

> To my employer: I hereby assign to that Local Union of the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (UAW), designated by the International Union to the Company, in writing, as having jurisdiction over the unit where I am employed, from any wages earned or to be earned by me as your employee, or from any Regular Supplemental Unemployment Benefits to be paid to me, such amount as may be in effect from time to time, during the effective period of this assignment and authorization, and due from me to the Union as my monthly membership dues in said Union, and (if owing by me) any initiation fee.

(Evans Dep. at 48; Def. Dep. Ex. 46; Lewis Dep. at 14; Def. Dep. Ex. 57, Ogle Dep. at 35, Def. Dep. Ex. 18).   Pursuant to the Authorization Forms, Ford deducted monthly dues on behalf of Plaintiffs and remitted them to Local 900 and Local 862.

8

Defendants point out that while they were working at the Michigan Truck facility, Evans and Lewis appeared on the active rolls for that facility as reported by Ford to the International Union. (Doc. 69-11, Art Grabowski Dep. at 31, 39; Pl. Dep. Ex. 20 & 21). Local 900 also reported to the International Union that Evans and Lewis were members of Local 900. (Grabowski Dep. at 40-41). After they returned to the jurisdiction of Local 863, Local 900 reported to the International Union that Evans and Lewis were deleted from its membership rolls. (Grabowski Dep. at 41-42, 44). In turn, Local 863 reported to the International Union that it added Evans and Lewis to its membership rolls. (Pl. Dep. Exs. 20, 21).

Similarly, while Ogle was working at the Kentucky Truck facility, Ogle appeared on the active rolls for that facility as reported by Ford to the International Union. (Grabowski Dep. at 27-36; Pl. Dep. Ex. 19). Local 862 reported to the International Union that Ogle was a member of Local 900. (Grabowski Dep. at 19-21). When Ogle returned to the jurisdiction of Local 863, Local 863 reported to the International Union that it added Ogle its membership rolls. (Pl. Dep. Ex. 19).

Plaintiffs point to the following evidence in the record to demonstrate that they remained under the jurisdiction of Local 863 when they were working at the Michigan and Kentucky facilities. In June of 2004, while they were still working at the Michigan Truck facility, Evans and Lewis attended a Local 863 membership meeting. (Doc. 71-2, Evans Aff. ¶ 28; Doc. 71-3, Lewis Aff. ¶ 113). Evans was introduced as one of the "boys from Michigan Truck." (Evans Aff. ¶ 28). Evans participated fully as a member of Local 863, including voting, adopting minutes, approving financial reports, accepting chairmen reports and participating in debate on new business. (Id., ¶ 92).

9

However, Defendants explain that as a general matter, Local 863 does not verify membership a general membership meeting. (Blust Dep. at 103). Local 863 permits spouses, children and individuals working at other facilities to attend its meetings. (Id at 102). Only when the vote is close will Local 863 divide the house. (Id. at 103).

Plaintiff also points to the affidavit of Doug Kilgour, who was another employee who elected to take preferential placement and worked with Ogle at the Kentucky Truck facility. Kilgour explains that when he asked one of the Local 863 officials about preferential placement, the official described it as being "loaned out to the other Locals." (Doc. 71-5, Doug Kilgour Aff. ¶ 13). Kilgour also states that when he tried to vote on an issue which came up at the Kentucky Truck facility, a union official told him that because he was on preferential placement, he "was not allowed to vote at the Kentucky Truck plant." (Id., ¶ 16). Kilgour states that he checked with the union secretary and his name was not on the union ledger. (Id., ¶ 27).

Plaintiffs explain that other employees were told by Local 863 officials that when they elected to take preferential treatment, they would "still be a part of Sharonville" and would be "on loan" to the other facilities. (Doc. 71-6, Tommy Hawks Aff. ¶ 13; Doc. 71-7, Tina Ball Aff. ¶ 8; Doc, 71-9, Joe Clark Aff ¶ 7).

However, Defendants respond that these statements by Local 863 officials are contrary to the language found in the UAW-Ford National Agreement. Defendants explain that there is a difference between a loan and a preferential placement. A loan is authorized by Article 8, Section 22 of the Ford National Agreement, while preferential placement is governed by Appendices M, N and O to the Ford National Agreement. (Pl. Ex. 9, at 84; Doc. 105-11, Michael Geiger Dep. at 7-8). Defendants explain that when

loans are negotiated, the terms of the particular loan are negotiated by the parties and memorialized in an agreement. (Doc. 74-16, Paul Quick Dep. at. 98; Browning Dep. at 147).

"It is well settled that a union's consistent interpretation of its own constitution will not be disturbed by a federal court unless the challenged regulation is 'unreasonable.'" *Taylor v. Great Lakes Seamen's Union, Local 5000, United Steelworkers of Am.*, 701 F.2d 590, 592 (6th Cir. 1983) (citing *International Brotherhood of Boilermakers v. Hardeman*, 401 U.S. 233 (1971)); see also *Pearson v. SEIU Healthcare Mich.*, 501 Fed. Appx. 461, 468, (6th Cir. 2012) ("And in examining the international union's interpretation of several provisions of its constitution, we did not apply traditional rules of contract interpretation . . . Instead, we decided whether the international union's interpretations were fair and reasonable"). Based on the record, Defendants interpretation of its Constitution has been consistent. There is no evidence of a past practice of Local 863 treating individuals who worked at other facilities as members. Local 863 did not treat Plaintiffs as members during the relevant time period. Plaintiffs did not pay dues to Local 863 and did not include Plaintiffs on its rolls. It is a reasonable interpretation of the UAW Constitution that a member leaving the jurisdiction of her or his own Local Union shall establish her or his membership in another UAW Local Union by payment of dues to such other UAW Local Union.

Accordingly, the Court concludes that Plaintiffs were not members of Local 863 on September 20, 2004, and therefore they lack standing to bring a § 411 claim based on the vote which took place on that date.

### III. **CONCLUSION**

Based on the foregoing, it is hereby **ORDERED** that:

1. Plaintiffs' Motion for Hearing (Doc. 125) is **DENIED**;

2. Plaintiffs' Motion to Strike the Affidavit of Greg Drudi (Doc. 113) is **DENIED**;

3. Defendants' Motion for Summary Judgment (Doc. 69) is **GRANTED**;

4. Plaintiffs' Partial Motion for Summary Judgment (Doc. 71) is **DENIED**; and

5. This matter shall be **CLOSED** and **TERMINATED** from the docket of this Court.

**IT IS SO ORDERED.**

                                             */s/ Michael R. Barrett*
                                             Michael R. Barrett
                                             United States District Judge